UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PEDIGO PRODUCTS, INC.,

         Plaintiff,

   v.

KIMBERLY-CLARK WORLDWIDE, INC.,

         Defendant.

CASE NO. 3:12-CV-05502-BHS

ORDER GRANTING DEFENDANT'S MOTION TO CHANGE VENUE

This matter comes before the Court on Defendant Kimberly-Clark Worldwide, Inc.'s ("K-C Worldwide") motion to change venue, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Northern District of Georgia. Dkt. 25. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On June 7, 2012, Plaintiff Pedigo Products, Inc. ("Pedigo") filed a complaint alleging patent infringement as the result of K-C Worldwide's selling, offering for sale, and/or importing products that are covered by United States Patent No. 6,091,102 (the "'102 patent") assigned to Pedigo. Dkt. 1 ("Complaint"). Additionally, Pedigo alleges

1  that K-C Worldwide's activities induced others in the United States to infringe or
2  contribute to the infringement in the United States of the '102 patent. *Id*.
3       On December 19, 2012, K-C Worldwide filed a motion to change venue. Dkt. 25.
4  On January 07, 2013, Pedigo responded. Dkt. 30. On January 11, 2013, K-C Worldwide
5  replied. Dkt. 33.

## II. FACTUAL BACKGROUND

7       This is a patent infringement case involving a patent held by Pedigo and its
8  subsidiary, OR Specific, Inc. ("OR-S") (collectively "Pedigo"). Pedigo is a corporation
9  organized under the laws of Washington, with a principal place of business in Vancouver,
10 Washington. Dkt. 1, ¶ 3. OR-S is a corporation organized under the laws of Florida,
11 with a principal place of business in Vancouver, Washington. *Id.*, ¶ 4. Defendant K-C
12 Worldwide is a corporation organized under the laws of Delaware, with a principal place
13 of business in Texas. Dkt. 25 at 7. According to K-C Worldwide, Kimberly-Clark
14 Global Sales ("K-C Global Sales") is the entity principally involved in the activity related
15 to the alleged patent infringement. *Id*. K-C Global Sales is a Delaware corporation, with
16 significant places of business in Roswell, Georgia; Knoxville, Tennessee; and Neenah,
17 Wisconsin. *Id*.
18      Pedigo is a corporation that manufactures stainless steel and chrome equipment
19 for the healthcare industry in its Vancouver, WA facility and sells its products to
20 hospitals and other healthcare providers throughout Washington, the United States, and
21 the world. Complaint, ¶ 10. In 2007, Pedigo became aware of a new style of surgical
22 table and accompanying sterile drape being offered by OR-S, a company run by Dan

Becker. Dkt. 30 at 8. Mr. Becker had previously finalized his drape design and applied for a patent. *Id.* He was awarded the '102 patent for a "Drape for Multiple-Tiered Sterile Hospital Surface and Associate Methods" by the United States Patent and Trademark Office on February 1, 2000. Complaint, ¶ 18. Pedigo later purchased OR-S, and Mr. Becker assigned the '102 patent to Pedigo. Dkt. 30 at 9. At that point, OR-S became, and remains today, a wholly owned subsidiary of Pedigo. *Id.* In 2012, Pedigo became aware that K-C Worldwide was offering for sale a drape for a two-tiered operating room table that it alleges infringed the '102 patent. *Id.*

After filing this case in June 2012, Pedigo sent a formal cease and desist letter to K-C Worldwide, including a courtesy copy of the filed complaint. *Id.* In October 2012, K-C Worldwide informed Pedigo that K-C Worldwide would be introducing a new version of a drape for a two-tiered operating room table in the near future. *Id.* Pedigo requested a sample of the new version so it could determine whether or not the new version infringed the '102 patent. *Id.* at 9-10. K-C Worldwide refused to provide a sample. *Id.* at 10.

### III. DISCUSSION

K-C Worldwide has moved to transfer this action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of this section is to "prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van*

*Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26-27 (1960)). The statute "displaces the common law doctrine of *forum non conveniens*" with respect to transfers between federal courts. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). In passing § 1404(a), Congress "intended to permit courts to grant transfers upon a lesser showing of inconvenience" than was needed for dismissal under the doctrine of *forum non conveniens*. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

The statute has two requirements on its face: (1) that the district to which defendant seeks to have the action transferred is one in which the action "might have been brought," and (2) that the transfer be for the convenience of parties and witnesses, and in the interest of justice. 28 U.S.C. § 1404(a). It is undisputed that Pedigo could have brought this case in the Northern District of Georgia. Dkt. 30 at 12. Therefore, the decision to transfer turns on whether the Court finds such transfer to be proper under the "convenience of parties and witnesses" and "interest of justice" standards. The burden is on defendants to demonstrate that the transfer is warranted. *Selah, et al., v. Titan Corporation, et al.,* 361 F. Supp. 2d 1152, 1155 (C.D. Cal. 2005).

A court should consider the following factors when evaluating the convenience of the parties and witnesses and the interests of justice: (1) the convenience of the parties and the witnesses; (2) the location where the alleged events in the lawsuit took place; (3) the relative ease of access to sources of proof; (4) the plaintiff's choice of forum; (5) the pendency of related litigation in the transferee forum; (6) the relative congestion of the two courts; (7) the public interest in the local controversies; and (8) the relative

familiarity of the two courts with the applicable law. *Decker Coal*, 805 F.2d at 843. These factors shall be measured here under the statutory considerations of convenience of parties, convenience of witnesses, and the interests of justice.

**A.     Convenience of the Parties**

Pedigo asserts that the plaintiff's choice of forum should be given great weight and that the defendant's burden is a heavy one. Dkt. 30 at 12. However, because application of § 1404 results in transfer, not dismissal as in *forum non conveniens*, a lesser showing of inconvenience is required to upset plaintiff's choice of forum. *Selah,* 361 F. Supp. 2d at 1156 (citing *Norwood*, 349 U.S. at 42, 75 S. Ct. 544).

Where the action has little connection with the chosen forum, less deference is accorded plaintiff's choice, even if plaintiff is a resident of the forum. *Norwood*, 349 U.S. at 42 (citing *Cain v. New York State Board of Elections*, 630 F. Supp. 221, 227 (E.D.N.Y. 1986)). In patent infringement actions, the preferred forum is "that which is the center of gravity of the accused activity." *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 482 n. 17 (D.N.J. 1993); quoting *S.C. Johnson & Son, Inc., v. Gillette Co.*, 571 F. Supp. 1185, 1188 (N.D. Ill. 1983). The district court "ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Id.*

While Pedigo attempts to establish ties between the subject matter of this litigation and Washington by asserting K-C Worldwide sold or offered for sale the accused product in this district (Dkt. 25 at 7), these limited sales are insufficient to establish that Washington is the "center of gravity of the accused activity." In the large picture, these

sales activities in Washington are relatively minor and do not establish Washington as the center of gravity for K-C Worldwide's allegedly infringing activities. Nor do these sales activities change the fact that the central and essential activities relevant to this lawsuit – the design, research, development, and marketing of the K-C Worldwide drapes – occurred outside of Washington. The originally accused product was designed in California and manufactured in Mexico. *Id*. The research and engineering efforts related to the redesigned accused drape were performed in Roswell, Georgia. *Id*. Thus, the center of gravity in this case, based on the location where the design, research, development, and marketing of the accused products took place, lies outside of the Western District of Washington, and weighs in favor of the Georgia forum.

As to the relative convenience to the parties, the Court may not transfer a case simply to shift the burden from one party to another. *Decker Coal*, 805 F.2d at 843. Comparatively, Pedigo is a relatively small corporation with little or no physical contacts with Georgia, whereas K-C Worldwide is a large international corporation with worldwide distribution of its products. Dkt. 30 at 18. "The disruption of business affairs due to the time and cost of distant litigation is far more severe and detrimental to a small [company] than it is to a much larger corporation." *U-Haul Int'l, Inc. v. Hire a Helper, LLC*, 2008 WL 4368663, at *2 (D. Ariz. 2008) (quoting *SRAM Corp. v. SunRace Roots Enter. Co., Ltd.*, 953 F. Supp. 257, 260 (N.D. Ill. 1997). While Pedigo is not necessarily a "small company" – having more than 105 employees and annual revenues of less than $30 million (Dkt. 30 at 18) – it is more likely than K-C Worldwide to suffer injury if

required to litigate in a distant forum. Thus, the relative size of the companies is either neutral or weighs slightly in favor of the Washington forum.

Although Pedigo chose the forum for this litigation, it is abundantly clear that the "center of gravity" lies outside of the Western District of Washington. Additionally, given the size of the two companies, neither would suffer consequential injury if required to litigate in a distant forum. Therefore, the convenience of the parties weighs in favor of the Northern District of Georgia.

**B.      Convenience of the Witnesses**

When considering the convenience to witnesses, "the convenience of non-party witnesses is the more important factor." *Saleh*, 361 F. Supp. 2d at 1160 (quoting *Aquatic Amusement Associates, Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990)). The Court should consider not only how many witnesses each side may have, but also the relative importance of their testimony. *Id.* (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984)). Pedigo and K-C Worldwide have each alluded to several party-witnesses who would be called to testify at trial. Additionally, Pedigo has identified the patent inventor, who resides in Florida, as a non-party witness; K-C Worldwide may present one or more witnesses from Avent, Inc., the manufacturer of the original accused product, which has a place of business in Nogales, Mexico, as non-party witness(es). Either venue will require one of the parties and its witnesses to travel; therefore this factor turns on the convenience of the non-party witnesses. K-C Worldwide has demonstrated that the potential non-party witnesses would be required to

travel greater distances if this district retained venue. The potential burden on the non-party witnesses favors litigation of this matter in the Northern District of Georgia.

**C.    Interest of Justice**

The interest of justice factor is perhaps the most important. See *Amazon.com v. Cendant Corp.,* 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005). "Consideration of the interest of justice, which includes judicial economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'" *Regents of the University of California v. Eli Lilly and Company*, 119 F.3d 1559, 1565 (Fed. Cir. 1997).

The congestion of the court's docket is a factor to be considered under this heading. According to the most recently available Federal Court Management Statistics, there is not a significant difference in caseload between this district and the Northern District of Georgia. Dkt. 25 at 15. For the 12-month period ending December 31, 2011, the number of civil filings per judge in this district was 478 as compared to 507 in the Northern District of Georgia. *Id.* The median time to dispose of a civil matter (from filing to disposition) is shorter in the Northern District of Georgia (6.0 months vs. 6.2 months). *Id.* Additionally, 2.4% of civil cases in the Northern District of Georgia are over three years old, as compared to 7.1% of civil cases in this district. *Id.* These statistics reveal that judicial economy and court congestion is either neutral or weighs slightly in favor of transfer.

In addition, the familiarity of the forum with the law that will govern the case should be considered when assessing the interests of justice. Patent infringement claims

are governed by federal law.  As such, this district is in no better position than the Northern District of Georgia in applying the applicable law and deciding this case.  Therefore, the familiarity of the forum with the applicable law is neutral.

Lastly, earlier litigation of the same patent in a particular venue may be a relevant consideration.  *See In re Link-A-Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011).  In November 2010, OR-S filed a patent infringement suit in the Northern District of Georgia alleging an infringement of the same patent at issue in this matter.  *OR Specific, Inc. v. Drape Options, LLC*, Civil Docket No. 1:10-cv-03827-TCB (N.D. Ga. 2010).  Although this case may not be assigned to the judge who is presiding over the related case, the Northern District of Georgia is likely more familiar with the issues surrounding enforcement of the '102 patent.  Further, the fact that an entity associated with Pedigo recognized the suitability of venue in the Northern District of Georgia somewhat undercuts Pedigo's arguments that it is not a convenient forum to prosecute this case.  Therefore, this consideration weighs slightly in favor of transfer.

## IV. ORDER

Therefore, it is hereby **ORDERED** that K-C Worldwide's motion to change venue (Dkt. 25) is **GRANTED**.  The Clerk is directed to transfer this case to the Northern District of Georgia.

Dated this 30th day of January, 2013.

BENJAMIN H. SETTLE
United States District Judge